TOEPFER et al. v. GALLAND-HENNING PNEUMATIC MALTING DRUM MANUF'G CO. et al.

(Circuit Court of Appeals, Seventh Circuit. November 23, 1897.)

No. 258.

PATENTS—INFRINGEMENT—MALT KILNS.
   The Toepfer patent, No. 226,890, for improvements in malt kilns, construed, and *held* not infringed as to the first claim, which relates to certain devices for suspending and dumping the drying trays. 67 Fed. 134, affirmed.

Appeal from the Circuit Court of the United States for the Eastern District of Wisconsin.

This was a suit in equity by Frank Toepfer and Peter G. Toepfer against the Galland-Henning Pneumatic Malting Drum Manufacturing Company and others for alleged infringement of a patent for improvements in malt kilns. The circuit court dismissed the bill, on the ground that the defendants' device did not infringe the claim in controversy. 67 Fed. 134. From this decree the complainants appealed.

Henry S. Towle and Stanley S. Stout, for appellants.
H. G. Underwood, for appellees.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

SHOWALTER, Circuit Judge. The cause of action here is an alleged infringement of the first claim of letters patent No. 226,890. The bill was dismissed in the circuit court on the holding there of noninfringement. The patent was for "certain new and useful improvements in malt kilns." The claim in question concerns more particularly "certain devices for suspending and dumping the drying trays." Fig. 1 of the drawings, being "a perspective view of one floor of a malt kiln," and Fig. 2, being "a section of the same on the line x, x, Fig. 1," are shown on the following page.

The patentee says in his specification:

"A, A, A', A', represent the walls of the kiln. In the walls A, A, I leave openings, in which I affix bearing plates, B, B', and across from the walls A', A', I suspend girders, C, to which I attach bearing brackets, D, D. These brackets project upward for about half their length at right angles to the girders, and are then deflected at an angle of about forty-five degrees, terminating in bearings, d. The trays are constructed as follows: I make them about twelve inches wide, and of any length up to fifty feet, with metallic frames, over which coarse wire gauze is stretched, and fastened by side pieces riveted on the outside. They are also provided with journals, E, at their ends, and as many more along their length as may be necessary to afford a proper support: and these journals I make hollow, with square bearings, for the operating rods, F, which are also square. Now, the rear journals of the trays having been thrust into the bearings, B', in the rear wall, the other journals will naturally drop into their respective bearings, after which the front bearings may be covered by a face plate, which I make easily removable, and the joint protected by face plates, a, cut out at a', to correspond with the bearings B. The trays will now be free to make a quarter of a revolution in one direction, studs, f, f, preventing their revolution in the other direction, and, together with the shanks of the standards, D, stopping them on the quarter or after they have passed slightly beyond it, the jar caused by the violent contact entirely ridding the trays of the malt. To bring about this dumping, I provide square rods, F, with crank arms, J, and pass the rods, F, through the journals, E, connecting the crank arms by a bar, D', using one of the arms as a handle by which to dump all of the trays in a series at once."

The specification contains, also, as bearing on the claim in question, the following:

"Heretofore it has been impossible to use very long iron trays, and to operate them from the outside, as it was difficult to control them, owing to their liability to spring and twist. Long wooden trays are open to the same objection, and have had to be dumped separately by an operative, who entered the kiln; but by means of my square rod, F, I can apply the dumping force equally along the entire length of the trays; and, as there is no keying to be done,

there will never be any danger of the parts becoming loose or getting out of order; and, besides, each tray may be easily removed by itself without displacing any of the others."

The original first and second claims were as follows:

"(1) In a malt dryer, the trays, having end and intermediate bearings in combination with square operating rods, passing through corresponding apertures in said bearings, as set forth."

"(2) In a malt dryer, brackets, D, constructed as described, in combination with end stops, f, f, for supporting, and for limiting the motion of, the trays as set forth."

These claims were rejected in the patent office on reference to a patent (No. 75,503) issued to one Whitney; and the following, which is the claim here in controversy, was inserted:

"In a malt dryer, a removable tilting tray, provided with journals having bearing in the end walls of the kiln and on an intermediate bracket or brackets, the journals of the trays having polygonal openings for the reception of a polygonal tilting shaft, in combination with a corresponding tilting shaft, substantially as and for the purpose specified.".

A tilting tray with intermediate journals in supporting bearings, and with journals at either end in bearings which are integral with and form part of the walls of the building or kiln, and with a polygonal tilting shaft extending through polygonal openings in the journals, is readily conceivable. The tilting shaft in such a structure might be withdrawn, but the tray would still remain in position. It could not be removed as an entirety without tearing down a portion of one wall or the other. Whether such a structure or combination would be patentable is not a question here. The subject-matter of the claim here in controversy is a removable tray. The patentee says:

"Now, the rear journals of the trays having been thrust into the bearings, B', in the rear wall, the other journals will naturally drop into their respective bearings, after which the front bearings may be covered by a face plate, which I make easily removable."

If this face plate be removed, the tray will then be retained in position only by the tilting shaft, F. If that shaft, which is not keyed, be now withdrawn, the tray may be lifted bodily from its position in the kiln. It is plainly the showing of the specification and drawings that the bearings, B and B', are each divided horizontally, so that the upper section or half of either or both may be removed. The structure of the shaft, F, whereby it may be withdrawn from the journals, is functional, therefore, with respect to the removability of the tray. If this shaft could not be withdrawn, the tray could not be removed. The shaft, F, of the claim, is one which is thus separable, or capable of being withdrawn longitudinally, from the journals, as the means whereby the tray is removable. It is in this aspect that the shaft, F, enters into relation with a removable tray.

In the structure of appellees, the tray, if not made in sections, would not be removable at all, since the bearings for the end journals are integral with the walls of the kiln or building. But the practice of the appellees is to make the tray in sections placed in line, and secured by bolts through adjacent end crosspieces. The tilting shaft is also made in sections, but one section of shaft may extend through two sections of tray. A tray of this kind is not removable as an en-

tirety, or as a tray. The bolts which hold the sections together are withdrawn, and then the sections, each containing a portion of the shaft inseparable from it except by breakage, are removed one by one; or two sections of the tray, held together by one section of the shaft, are unbolted and removed in a single piece. There is in appellees' structure no shaft, F, by the longitudinal withdrawal of which the tray is released, so that it may be lifted bodily out of its journal bearings,—no shaft, F, in other words, which by its structure is functional as contributing towards the removability of the tray as an entirety, or as a tray. Or, on the view taken by the learned judge who heard the case in the circuit court, there is in appellees' structure no removable tray, in the sense which the word "removable," as used in the claim, must apparently have. The abandonment of claims 1 and 2, as shown by the file wrapper and contents, makes it unnecessary for this court to comment on the prior art as affecting the matter of novelty in the combination of the claim in controversy. **The decree is affirmed.**